UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

United States of America,   Case No. 3:18-cr-571

        Plaintiff,

v.   MEMORANDUM OPINION
AND ORDER

Douglas Wayne Kemp,

        Defendant.

## I.   Introduction

Defendant Douglas Wayne Kemp has filed a motion to compel the production of a transcript of online communications between himself and an undercover FBI agent. (Doc. No. 33). The government filed a brief in opposition to the motion, (Doc. No. 36), and Kemp has filed a brief in reply. (Doc. No. 38). For the reasons stated below, I deny Kemp's motion.

## II.   Background

On October 3, 2018, Kemp was indicted by a federal grand jury on one count of attempted sex trafficking of a minor, in violation of 18 U.S.C. § 1591(a)(1) and 1594(a), and one count of attempted coercion and enticement, in violation of 18 U.S.C. § 2422(a). (Doc. No. 5). The charges arose from private messages exchanged between Kemp and Alex Hunt, an FBI agent posing as a 17-year-old girl, over the course of approximately two months in the summer of 2018. (*See* Doc. No. 37 at 1-2).

Kemp and the undercover agent first communicated on the website Plenty of Fish. Kemp told the undercover agent he would take "her" to Detroit, Michigan to have sex for money. The two communicated on Plenty of Fish for several days until the agent's account was deactivated. Kemp previously had given the undercover agent his Facebook profile name and they continued communicating on that platform for several weeks, until Kemp's Facebook profile was deactivated. During this intervening period, the undercover agent reestablished a profile on Plenty of Fish and made contact again with Kemp on that website after Kemp's Facebook profile was deactivated.

Kemp and the agent communicated on Plenty of Fish for a few more weeks until, on September 5, 2018, Kemp sent the undercover agent a message that he had a ride to Detroit. The next day, Kemp told "her" to meet him at a location in Toledo, Ohio.

On the same day, Kemp also was supposed to meet a 21-year-old woman at another location in Toledo. This meeting was part of an undercover operation involving Michael Russo, a police officer from Arizona assigned to an FBI human trafficking task force in the Phoenix, Arizona area. (Doc. No. 37-6 at 1-4). Kemp had contacted Russo's undercover persona on Plenty of Fish approximately a week before, and Russo was in Northwest Ohio on September 5 and 6, 2018, to assist with the investigation into Kemp. (*Id.*). Kemp was arrested when he arrived at the location to meet Russo's undercover persona.

### III. ANALYSIS

After Kemp was indicted, the government disclosed various materials to Kemp in discovery, including screenshots of the conversations between Kemp and the undercover agent on Facebook and the later conversations on Plenty of Fish. Kemp has filed a motion to compel, asserting he "believes the government made no attempt to obtain or preserve the [Plenty of Fish conversations] because it recognized that those initial . . . contacts would help him demonstrate the defense of entrapment." (Doc. No. 33 at 3). Kemp further alleges he "believes that the government, or its

agent(s), took affirmative steps to assure that the [Plenty of Fish] conversations were not discoverable." (*Id.*). Kemp seeks a hearing for the purpose of cross-examining the agents involved in the investigation regarding these initial conversations.

Rule 16(a) requires the government to disclose "any relevant written or recorded statement by the defendant if the statement is within the government's possession, custody, or control[,] and the attorney for the government knows – or through due diligence could know – that the statement exists . . . ." Fed. R. Crim. P. 16(a)(1)(B)(i). The government states it does not have the initial messages between Kemp and Hunt on Plenty of Fish and, therefore, has not failed to turn them over.[1] (Doc. No. 36 at 11).

Implicitly conceding the government cannot be compelled to turn over what it does not have, Kemp questions the motives underlying the government's failure to capture or subpoena the initial Plenty of Fish communications:

> Defendant and his counsel believe that at the hearing to be held on Defendant's motion the court will learn that the deactivation of the agent's account did not necessarily cause the loss of the requested initial communications on [Plenty of Fish] between the Agent's alter ego and the Defendant. Defendant, who was a party to those communications, believes that those initial [Plenty of Fish] communications are exculpatory in nature, whether or not they ultimately support a defense of entrapment. Production of the sought[-]after communications is essential to Mr. Kemp's preparation for trial; and their having gone missing raises suspicions about the potential bad faith of the government or its agent.

(Doc. No. 38 at 2).

I conclude Kemp fails to show he is entitled to a hearing or to an order requiring the government to obtain and disclose the initial communications between Kemp and the undercover agent on Plenty of Fish.

---

[1] Though Kemp was on notice of the nature and basis of the charges against him within a few months of the initial Plenty of Fish communications, there is no indication that Kemp himself attempted to preserve or obtain the communications which he contends would show the agent entrapped him.

3

Kemp's stated purpose in seeking a hearing is to exercise his right under the Sixth Amendment's Confrontation Clause to require "the agent [to] submit to cross-examination regarding the missing initial [Plenty of Fish] communications." (Doc. No. 38 at 1). But Kemp's right to confrontation is a <u>trial</u> right. *See, e.g., Kentucky v. Stincer*, 482 U.S. 730, 737 (1987) ("The right to cross-examination, protected by the Confrontation Clause, thus is essentially a 'functional' right designed to promote reliability in the truth-finding functions of a criminal trial."). Kemp has not demonstrated the Sixth Amendment requires that he be permitted to cross-examine, in court, potential witnesses against him prior to a trial.

Moreover, Kemp has not shown that the hearing he seeks is permissible under the Federal Rules of Criminal Procedure. "Rule 12 directs the district court to make preliminary findings of fact necessary to decide the questions of law presented by pre-trial motion as long as the court's findings on the motion do not invade the province of the jury." *United States v. Craft*, 105 F.3d 1123, 1126 (6th Cir. 1997) (citing *United States v. Jones,* 542 F.2d 661, 664–65 (6th Cir. 1976)).

Kemp theorizes that "the government made no attempt to obtain or preserve the [Plenty of Fish] contacts because it recognized that those initial [Plenty of Fish] contacts would help him demonstrate the defense of entrapment." (Doc. No. 33 at 3). The government contends Hunt did not induce Kemp to engage in the offense conduct and that there is evidence Kemp attempted to entice at least two other minors to engage in prostitution in the years prior to Kemp's communications with Hunt. (Doc. No. 36 at 11-15).

I see no way to decide whether Agent Hunt failed to preserve the Plenty of Fish communications because those communications showed Hunt had coerced Kemp into committing the offense conduct without usurping the jury's role of determining the merits of Kemp's entrapment defense. Therefore, I conclude Kemp's requested hearing is barred by Rule 12(b)(1).

4

That leaves Kemp's argument that the government should have issued a subpoena to Plenty of Fish to obtain a record of the initial communications or pursued "alternative sources for recovery of the lost initial [Plenty of Fish] communications." (Doc. No. 38 at 2). Kemp points to the government's general duty to disclose evidence favorable to the accused pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963). Kemp in essence argues the government has a duty to determine whether Hunt failed to capture or obtain a record of communications that would be favorable to Kemp and material to the issue of guilt. *See United States v. Presser*, 844 F.2d 1275, 1281 (6th Cir. 1988) ("[T]he obligation the *Brady* rule imposes on the government is 'the obligation to turn over evidence in its possession that is *both* favorable to the accused and material to guilt or punishment.'") (quoting *Pennsylvania v. Ritchie*, 480 U.S. 39, 57 (1987)) (emphasis in original).

But Kemp runs in two insurmountable hurdles. The first is that "[t]here is no general constitutional right to discovery in a criminal case, and *Brady* did not create one . . . ." *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977).

The second is that *Brady* does not apply "if the defendant knew or should have known the essential facts permitting him to take advantage of the information . . . or if the information was available to him from another source." *United States v. Smith*, 749 F.3d 465, 489 (6th Cir. 2014) (quoting *United States v. Graham*, 484 F.3d 413, 417 (6th Cir. 2007)); *see also United States v. Beaver*, 524 F.2d 963, 966 (5th Cir. 1975) ("*Brady* clearly does not impose an affirmative duty upon the government to take action to discover information which it does not possess.").

Kemp necessarily concedes he knows the essential facts which would permit him to take advantage of the information he seeks, because he was part of those conversations. Moreover, he does not explain why he is or was unable to obtain the records in question directly from Plenty of Fish. Thus, Kemp has not shown Hunt's failure to preserve or obtain a record of the initial communications violated his due process rights.

5

## IV. CONCLUSION

I conclude Kemp fails to show the government engaged in any misconduct by not obtaining the initial Plenty of Fish communications or that the government has failed to produce material evidence favorable to him over which it has control. Therefore, and for the reasons set forth above, I deny Kemp's request for a hearing and his motion to compel. (Doc. No. 33).

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge